**LEWIS BRISBOIS BISGAARD & SMITH** LLP
TIM J. VANDEN HEUVEL, SB# 140731
Email: tim.vandenheuvel@lewisbrisbois.com
BRIAN SLOME, SB# 238134
Email: brian.slome@lewisbrisbois.com
701 B Street, Suite 1900
San Diego, California 92101
Telephone: 619.233.1006
Facsimile: 619.233.8627

Attorneys for SHARP HEALTHCARE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE HUDSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SHARP HEALTHCARE, a California Nonprofit Public Benefit Corporation,<br><br>Defendant. | CASE NO. 13 CV 1807 MMA NLS<br><br>**DEFENDANT SHARP HEALTHCARE'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO F.R.C.P. 12(B)(1); OR IN THE ALTERNATIVE, FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(B)(6); OR IN THE ALTERNATIVE, FOR MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO F.R.C.P. 12(e)** [Filed Concurrently with Request for Judicial Notice, and Declarations of Gerilynn Sevenikar, Keri Kiesendahl and Tim J. Vanden Heuvel]<br><br>Date:           November 4, 2013<br>Time:           2:30 p.m.<br>Courtroom:   3A<br>Judge:          Michael M. Anello<br>Complaint Filed: August 2, 2013<br>Trial Date:    None Set<br><br>[No Oral Argument Requested] |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 4, 2013 at 2:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3A of the above entitled Court, located at 333 West Broadway Street, San Diego, CA 92101, defendant Sharp

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Healthcare, a California Nonprofit Public Benefit Corporation, will and hereby does

2   move this Court for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(1)

3   and 12(h), dismissing this action.

4        This Motion is made on the grounds that the District Court lacks subject matter

5   jurisdiction over this action, which challenges a final order of the Federal

6   Communications Commission, and that jurisdiction lies solely in the Court of

7   Appeals, in a suit naming the United States of America as a party, pursuant to the

8   Hobbs Act, 28 U.S.C. § 2342.

9        In the alternative, without admitting to the subject matter jurisdiction of this

10  court, defendant Sharp Healthcare moves this Court for an Order Dismissing the case

11  for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), on the

12  grounds that the Complaint fails to state a plausible cause of action against SHARP.

13       In the alternative, without admitting to the subject matter jurisdiction of this

14  court, defendant Sharp Healthcare moves this Court for an Order for a More Definite

15  Statement pursuant to Federal Rule of Civil Procedure 12(e), on the grounds that the

16  Complaint so vague and ambiguous that defendant cannot reasonably be expected to

17  frame a proper response.

18       This Motion is based upon this Notice of Motion, the accompanying

19  Memorandum of Points and Authorities, the Request for Judicial Notice, the

20  Declarations of Gerilynn Sevenikar, Kerri Kiesendahl and Tim J. Vanden Heuvel, all

21  pleadings, papers and records on file herein, any matter of which the Court may take

22  judicial notice, and such oral argument as may be presented at the hearing of this

23  Motion.

24

25  DATED: September 24, 2013          LEWIS BRISBOIS BISGAARD & SMITH LLP

26                                     By:      /s/ Tim J. Vanden Heuvel

27                                         Tim J. Vanden Heuvel

28                                         Brian Slome
                                           Attorneys for Defendant Sharp Healthcare

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) ........................................................................... 2

III.   FACTUAL AND PROCEDURAL BACKGROUND ........................... 3

     A.     Factual Background. .................................................................. 3

     B.     Procedural Background .............................................................. 5

IV.   Congress Provided the FCC Authority to Interpret and Enforce the TCPA, Leading to the 2008 FCC Order ........................... 5

V.     The Contents of the 2008 FCC Ruling Become Final ...................... 7

VI.   Jurisdiction Over This Action Is Vested Exclusively in the Court of Appeal, With the United States Named as a Defendant .................. 7

     A.     The Hobbs Act ......................................................................... 7

          1.     The Hobbs Act Governs Here and Divests This Court of Jurisdiction ....................................................................... 9

               (a)     The FCC Ruling is a Final Order for Purposes of the Statute .................................................................. 9

               (b)     The FCC Ruling is the Consummation of the FCC's Decision Making Process .......................................... 10

               (c)     The FCC Ruling determines rights and obligations from which legal consequences flow .............................. 10

     B.     HUDSON's Suit Requires that the Court Enjoin, Set Aside, Suspend or Determine the Validity of the FCC Ruling ................ 11

     C.     Virtually Every Jurisdiction in the United States Has Agreed with SHARP's Position in This Matter ............................................ 12

     D.     This Court Should Dismiss the Action As It Lacks Jurisdiction ......... 19

VII.   IN THE ALTERNATIVE, SHARP REQUESTS AN ORDER DISMISSING THE CASE FOR FAILURE TO STATE A CLAIM ............... 20

VIII.   IN THE ALTERNATIVE, SHARP REQUESTS AN ORDER REQUIRING A MORE DEFINITIVE STATEMENT ................................ 22

IX.    CONCLUSION .......................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

# **TABLE OF AUTHORITIES**

2

## CASES

3
4
*Ashcroft v. Iqbal*
    556 U.S. 662 (2009).................................................................................. 21, 22

5
*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007).................................................................................. 21, 22

6
7
*Bennett v. Spear*
    520 U.S. 154 (1997)........................................................................................ 10

8
*C.E. Design, Ltd. v. Prism Business Media*
    606 F. 3d 443 (7th Cir. 2010) ................................................................ passim

9
10
*Cellars v. Pacific Coast Packaging, Inc.*
    (N.D. Cal 1999) 189 F.R.D. 575.............................................................. 22, 23

11
*Chavez v. The Advantage Group*
    2013 U.S. Dist. LEXIS 110522 ....................................................... 17, 18, 19

12
13
*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*
    467 U.S. 837 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ................................ passim

14
*Davis  v. Fed. Election Comm'n*
    554 U.S. 724 S. Ct. 2759 (2008)..................................................................... 18

15
16
*Greene v. DirecTv, Inc.*
    2010 U. S. Dist. LEXIS 118270, WL 4628734 (N.D. Ill. Nov. 8, 2010)... 13, 19

17
*Gregory Village Partners, L.P. v. Chevron U.S.A. Inc.*
    (N.D. Cal. 2011) 805 F. Supp. 2d 888 ...................................................... 22, 23

18
19
*FCC v. ITT World Commc's, Inc.*
    466 U.S. 463, (1984)................................................................................ passim

20
*Frausto v. IC System, Inc.*
    2011 U.S. Dist. LEXIS 93514, 2011 WL 3704249 at *2 .......................... 13, 19

21
22
*Hicks v. Client Services, Inc.*
    2009 U. S. Dist. LEXIS 131193, WL 2365637 (S.D. Fla. June 9, 2009) .. 13, 19

23
*Kokkonen v. Guardian Life Ins. Co. of American*
    511 U.S. 375 (1994)......................................................................................... 2

24
25
*Leckler v. Cashcall, Inc.*
    2008 U.S. Dist. LEXIS 97439,WL 5000528 (N.D. Cal. Nov. 21, 2008)..passim

26
*Mais v. Gulf Coast Collection Bureau, Inc.*
    2013 U.S. Dist. LEXIS 65603, WL 1899616 (S.D. Fla. May 8, 2013) ....passim

27
28
*Mitchem v. Illinois Collection Service,*
    2012 U.S. Dist. LEXIS 126017, 2012 WL 170968 (N.D. Ill. Jan. 20, 2012)…16

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1        ii        13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

*Morales-Morales v. Ashcroft*
   384 F. 3d 418 (7th Cir. 2004) ................................................................. 18

*N.Y. Co. v. N.Y. Dep't. of Labor*
   440 U.S. 519 (1979) ..................................................................... passim

*Nack v. Walburg*
   715 F. 3d 680 (8th Cir. 2013) ........................................................ passim

*Nelson v. Santander Consumer USA, Inc.*
   2013 U.S. Dist. LEXIS 40799, at *23 (W. Dist. Wis. Mar 8, 2013) .......... 19

*Sacco v. Bank of America, N.A.*
   2012 U.S. Dist. LEXIS 178030,WL 6566681 (W.D.N.C. Dec.17, 2012) . 13, 19

*Sierra Club v. United States Nuclear Regulatory Commission*
   862 F.2d 222 (9th Cir. 1988) ................................................................... 9

*Thornhill Publishing Co. v. General Telephone & Electronics Corp.*
   594 F.2d 730 (9th Cir. 1979) ................................................................... 3

*Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*
   813 F.2d 1553 (9th Cir. 1987) ................................................................. 3

*United Investors Life Ins, C. v. Waddell & Reed, Inc.*
   360 F.3d 960 at 966-67 (9th Cir. 2004) ................................................... 2

*United States v. Any and All Radio Station Transmission Equip.*
   207 F. 3d 458 (8th Cir. 2008) ................................................................. 9

*United States v. Dunifer*
   219 F.3d 1004 (9th Cir. 2010) ........................................................... 9, 12

*United States v. United Mine Workers*
   330 U.S. 258 (1947) ............................................................................... 2

*US West Communications, Inc. v. Hamilton*
   224 F.3d 1049 (9th Cir. 2000) ....................................................... passim

*US West Communications, Inc. v. MFS Intelenet, Inc.*
   193 F.3d 1112 (9th Cir. 1999) ................................................................. 8

*Victor Oolitic Stone Co. v. CSX Transportation, Inc.*
   852 F. Supp. 721 (S.D. Ind. 1994) ....................................................... 11

*Watts v.Pickney*
   752 F. 2d 406 (9th Cir. 1985) ............................................................... 15

*Wilson v. A.H. Belo Corp.*
   87 F.3d 393 (9th Cir. 1996) ........................................................... passim

## STATUTES

28 U.S.C. § 1292 .................................................................................. 17

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | 28 U.S.C. § 2342 ................................................................................................passim

2 | 28 U.S.C. § 2344 ...............................................................................................................8

3 | 47 U.S.C. §§ 151-154 .......................................................................................................7

4 | 47 U.S.C. § 227 ...........................................................................................................5, 7

5 | 47 U.S.C. § 303 .................................................................................................................7

6 | 47 U.S.C. § 402 ...........................................................................................................8, 15

7

## RULES AND REGULATIONS

8 | 45 C.F.R. 164.520 .............................................................................................................4

9 | 47 C.F.R. § 1.2 ...............................................................................................................10

10 | 47 C.F.R. § 64.1200 ....................................................................................................6, 7

11 | Fed. R. Civ. P. 12 ...................................................................................................passim

12

## ADMINISTRATIVE RULINGS

13 | *Declaratory Ruling in re Rules and Regulations Implementing the
*Telephone Consumer Protection Act of 1991*

14 | FCC 07-232 (Dec. 28, 2007; release Jan. 4, 2008) ...................................................7, 12

15 | *Rules and Regulations Implementing the Telephone Consumer Protection
Act of 1991,* CG Docket No. 92-90, Report and Order

16 | 7 FCC Rcd 8752 (1992) ....................................................................................................6

17

18 | *Rules and Regulations Implementing the Telephone Consumer Protection
Act of 1991,* Notice of Proposed Rulemaking and Memorandum
Opinion and Order, 17 FCC Rcd 17459 CG Docket No. 02-278 and CC

19 | Docket No. 92-90 (2002) ..................................................................................................6

20 | *Rules and Regulations Implementing the Telephone Consumer Protection
Act of 1991,* CG Docket No. 02-278, Report and Order

21 | 18 FCC Rcd 14014 (2003) ................................................................................................6

22

23

24

25

26

27

28



## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This Court lacks subject matter jurisdiction over this action, pursuant to the Hobbs Act, 28 U.S.C. § 2342, and the action therefore must be dismissed. This action turns on the validity of a final order entered by the Federal Communications Commission ("FCC") after a lengthy formal rulemaking procedure (the "FCC Ruling" or alternatively "2008 FCC Ruling").[1] This FCC Ruling is dispositive of plaintiff Jane HUDSON's ("HUDSON's") claims against defendant Sharp HealthCare, a California Non-Profit Public  Benefit Corporation ("SHARP").

There are specific procedures set forth by Congress, and endorsed by the United States Supreme Court, to challenge the 2008 FCC Ruling. "A party challenging an FCC regulation as *ultra vires* must first petition the agency itself, and if denied, appeal the agency's disposition directly to the Court of Appeals as provided by the statute." *FCC v. ITT World Commc's, Inc.* 466 U.S. 463, 468 (1984).  The procedural requirement of the TCPA statute and the Hobbs Act requires not only that the matter be brought in the Court of Appeal, but that the United States be named as a defendant.

This specific procedural path designed by Congress, "serves a number of valid goals:  It promotes judicial efficiency, vests an appellate panel rather a single district judge with the power of agency review, and allows 'uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress' to enforce the TCPA."[2]  *Nack v. Walburg*, 715 F.3d 680, 685-86 (8th Cir.

---

[1]    A copy of the FCC Ruling (FCC 07-232, Released January 4, 2008) is submitted with the accompanying Request for Judicial Notice as Exhibit "A."

[2]    The 8th Circuit Court of Appeals in *Nack* also observed that permitting "an end run around the administrative review mandated by the Hobbs Act"..."could result in a judicial determination of a regulations invalidity without participation by the agency and upon a record not developed by the agency." *Nack*, 715 F.3d at 686.  That exact danger exists in this action, which is not only brought in the wrong venue, but *fails to name the United States as a party* as the Hobbs Act requires so that the FCC can (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   2013) (*citing CE Design, Ltd. v. Prism Business Media*, 606 F.3d 443, 450 (7th Cir.

2   2010)) (*quoting N.Y. Co. v. N.Y. Dep't of Labor*, 440 U.S. 519, 528 (1979)).

3   　　　The Hobbs Act vests exclusive jurisdiction of the action in the Courts of

4   Appeals "to enjoin, set aside, suspend (in whole or in part), or to determine the

5   validity" of final orders of the FCC.  28 U.S.C. § 2342. The FCC Ruling is a final

6   order, as it conclusively determines rights and obligations and interprets the TCPA.

7   The only way HUDSON could prevail in this case is if the Court invalidates, annuls

8   or suspends the FCC's Final Order as set forth in FCC 07-232.

9   　　　The exclusive jurisdiction provision of the Hobbs Act vests jurisdiction of this

10   matter solely in actions timely brought in the Court of Appeals, naming the United

11   States as a party, not in this format before this District Court. Because this Court lacks

12   subject matter jurisdiction, it should immediately dismiss this action.

13   **II.**　　**LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO**

14   　　　**RULE 12(B)(1)**

15   　　　Federal Rule of Civil Procedure 12(b)(1) allows a party to move the Court to

16   dismiss an action on the ground that the Court lacks subject matter jurisdiction. Fed.

17   R. Civ. P. 12(b)(1). The action must be dismissed "[i]f the Court determines at any

18   time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h).  This Court has

19   jurisdiction to determine its own jurisdiction. *Wilson v. A.H. Belo Corp,* 87 F.3d 393,

20   396 (9th Cir. 1996) (*citing United States v. United Mine Workers,* 330 U.S. 258, 292

21   n.57 (1947)). The plaintiff bears the burden of establishing that the Court does have

22   jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

23   Moreover, a District Court has an independent obligation to ensure that subject matter

24   jurisdiction is established. *See United Investors Life Ins, C. v. Waddell & Reed, Inc.,*

25   360 F.3d 960, 966-67 (9th Cir. 2004).

26   _____

27

28   participate in creating the record and defending its actions.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                              2                    13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1    This challenge is factually based, and allows resort to extrinsic evidence in

2 order to demonstrate that the Court lacks jurisdiction. The Court determines the facts

3 regarding its jurisdiction for itself rather than accepting the allegations of the

4 complaint. *See Trentacosta v. Frontier Pacific Aircraft Indus., Inc.,* 813 F.2d 1553,

5 1558 (9th Cir. 1987); *Thornhill Publishing Co. v. General Telephone & Electronics*

6 *Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).

7    **III.    FACTUAL AND PROCEDURAL BACKGROUND**

8    **A.    Factual Background.**

9    Plaintiff alleges rather cryptically that she "was admitted to Sharp on or around

10 September 25, 2012, and *may* have given them her cellular telephone number ending in

11 5954 at that time. . . ." (Compl. ¶ 14.) (Emphasis added.)  In fact, plaintiff was

12 admitted to SHARP on September 24, 2012, and at that time was given *three*

13 documents, *two* of which bear her signature.  (Decl. of Kerri Kiesendahl, hereinafter

14 "Kiesendahl Decl., ¶¶ 4, 7, 10; Decl. of Gerilynn Sevenikar, hereinafter "Sevenikar

15 Decl., ¶ ¶ 3, 6 and 10.)  And as a matter of fact Jane Hudson *did* provide her cellular

16 telephone number ending in 5954 at the time of the transaction that resulted in the debt

17 owed.  (Kiesendahl Decl. ¶¶ 10-11; Sevenikar Decl. ¶¶ 8-10.)

18    The first document is the "Admission Agreement for Inpatient and Outpatient

19 Services," (hereinafter "Admission Agreement.")  This document is brought to the

20 patient by a SHARP Access Service Representative at time of admission, and

21 executed by the patient. (Kiesendahl Decl. ¶¶ 6-7; Sevenikar Decl. ¶¶ 5-6 and Ex.

22 "B" to each.)  At paragraph 13, this document states:

23       "13.   Financial Agreement:   You agree, whether you sign as
         agent or as patient, that in consideration of the services to be rendered
24       to the patient, *you hereby individually obligate yourself to pay all*
         *hospital bills* in accordance with the rates as indicated in the hospital
25       charge description master and terms of the hospital to include service
         charges and/or interest bearing payment plans.  The hospital, or other
26       entity contracting with the hospital, may obtain credit reports     from
         national credit bureaus.  Should the account be referred to an attorney
27       or collection agency for collection, you shall pay all related fees and
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                                    3                              13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

collection expenses.  All delinquent accounts shall bear interest at the legal rate." (Emphasis added.)

Plaintiff Jane Hudson executed the Admission Agreement on September 24, 2012. (Kiesendahl Decl. ¶¶ 6-7; Sevenikar Decl. ¶¶ 5-6 and Ex. "B" to each.)

The second document plaintiff received and signed is referred to at SHARP as the "Attestation."  This document is also brought to the patient by the SHARP Access Service Representative at time of admission. (Kiesendahl Decl. ¶¶ 8-9, Sevenikar Decl. ¶¶ 8-9 and Ex. "C" to each.)  The Attestation is executed concurrently with the Admission Agreement by the patient.

In her Attestation, plaintiff Jane Hudson stated that she was uninsured and would be self paying her bill for care from SHARP, and *provided her cellular telephone ending in 5954 as the point of contact*.  (Kiesendahl Decl. ¶¶ 8-9, Sevenikar Decl. ¶¶ 8-11 and Ex. "C" to each.)  Notably, while she might have provided a home telephone number, she declined, leaving her cellular telephone as the sole point of contact. Plaintiff Jane Hudson executed the Attestation (Ex. "C" to both the Kiesendahl Decl. and Sevenikar Decl.) on September 24, 2012. (Kiesendahl Decl. ¶¶ 10-11, Sevenikar Decl. ¶¶ 8-11.)

Plaintiff was also provided with SHARP's Notice of Privacy Practices, as required by 45 CFR 164.520.  (Kiesendahl Decl. ¶¶ 3-4.)  In the paragraph entitled "Payment," it states "We may use and disclose your information for billing and to arrange for payment from you, an insurance company, a third party or a collection agency." (Kiesendahl Decl. ¶¶ 10-11, Sevenikar Decl. ¶¶ 3-4.)

In short, plaintiff provided her cellular number as the point of contact for her uninsured medical debt to SHARP, at the time the obligation to pay was created, and she agreed to personally pay the debt.  SHARP admits that it made telephone calls to plaintiff, and that each call it made was for the purpose of securing payment of amounts due and owing SHARP for healthcare for which Jane Hudson agreed to pay.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Jane Hudson had provided her cellular telephone number ending in 5954, at the time

2  of admission, as a point of contact via SHARP's "Attestation" form.  (Kiesendahl

3  Decl. ¶¶ 10-11; Sevenikar Decl. ¶¶ 11-12.)

4  **B.    Procedural Background.**

5       HUDSON brought this putative nationwide class action suit against SHARP,

6  alleging intentional and negligent violations of the TCPA, which provides, in relevant

7  part:

8       It shall be unlawful for any person within the United States …to
   make any call (other than a call made for emergency purposes or
9       *made with the prior express consent of the called party)* using any
   automatic dialing system or an artificial or prerecorded voice .. to any
10      telephone number assigned to a paging service, cellular telephone
   service, specialized mobile radio service, or other radio common
11      carrier service, or any service for which the called party is charged
   for the call . . . .

12

13      47 U.S.C. § 227(b)(l)(A) (emphasis added).

14      Plaintiff alleges that SHARP "operates as a collection corporation servicing

15  patient debt owed to SHARP for medical services," and "attempts to collect past-due

16  amounts owed on such debt." (Compl. ¶ 5.)  Plaintiff alleges that she received calls

17  from SHARP on her cellular telephone number ending in 5954, via SHARP's use of

18  an "automatic telephone dialing system" and using a "artificial or prerecorded voice."[3]

19  (*Id.* at ¶ 16.)

20  **IV.   Congress Provided the FCC Authority to Interpret and Enforce the TCPA,**

21      **Leading to the 2008 FCC Order**

22      The TCPA, which was enacted in 1991, expressly grants the FCC the authority

23  to exempt certain calls and impose certain conditions on the calls at issue:

24      [S]ection 227(b)(2)(C) gives the Commission authority to exempt

25  _____

26  [3]    Defendant SHARP does not concede that the calls it made to plaintiff's cellular
   phone ending in 5954 emanated from an "automatic telephone dialing system" as that
27  term is defined under the TCPA, but assumes, arguendo, that this is true, because
   SHARP has no liability to plaintiff Hudson even if that fact were proven.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

from the prohibition on autodialed or prerecorded message calls to wireless numbers contained in section 227(b)(1)(A)(iii) only those "calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights the provision is intended to protect."

FCC Ruling at 2-3 (*quoting* 47 U.S.C. § 227(b)(2)(C)).

The FCC adopted rules to implement the TCPA in 1992. FCC Ruling at 3 (*citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CC Docket No. 92-90, Report and Order*, 7 FCC Rcd 8752 (1992)); 47 C.F.R. § 64.1200. In 2002, the FCC "initiated a rulemaking proceeding to determine whether the Commission's rules needed to be revised to more effectively carry out Congress's directives in the TCPA." FCC Ruling at 4 (*citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking and Memorandum Opinion and Order*, 17 FCC Rcd 17459, CG Docket No. 02-278 *and CC Docket No.* 92-90 (2002)). This rulemaking culminated in new regulations issued in 2003. FCC Ruling at 4 (*citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order*, 18 FCC Rcd 14014 (2003)).

The 2008 FCC Ruling was the result of a process initiated by the filing of a Petition for Expedited Clarification and Declaratory Ruling regarding aspects of the 2003 rules. The Petition was filed on October 4, 2005, and supplemented on April 26, 2006, by ACA International ("ACA"). As described by ACA itself and as noted in the FCC Ruling, ACA is "an international trade organization of credit and collection companies that provide a wide variety of accounts receivable management services" and "represents approximately 5,800 company members ranging from credit grantors, collection agencies, attorneys, and vendor affiliates." FCC Ruling at 1 n.1.

ACA's Petition presented the precise issue raised by HUDSON's suit: it sought "clarification that the prohibition against autodialed or prerecorded calls to wireless telephone numbers in 47 C.F.R. § 64.1200(a)(1)(iii) does not apply to creditors and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1

6

13 CV 1807 MMA NLS

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1  collectors when calling wireless telephone numbers to recover payments for goods and

2  services received by consumers." FCC Ruling at 5 (*citing* Pet.). The FCC sought and

3  received comments, both in support and in opposition, from creditors, collectors,

4  consumer groups and consumers. FCC Ruling at 5-6.

5       Following discussion and analysis, the FCC formally adopted its Declaratory

6  Ruling "pursuant to Sections 1-4, 227, and 303(r) of the Communications Act of

7  1934, as amended, 47 U.S.C. §§ 151-154, 227, and 303(r); and Section 64.1200 of the

8  Commission's rules, 47 C.F.R. § 64.1200 . . . ." FCC Ruling at 9.

9  **V.**     **The Contents of the 2008 FCC Ruling Become Final**

10       As support for this motion, SHARP presents to the Court the declaratory ruling

11  by the FCC, the federal agency charged with interpreting the TCPA and 47 U.S.C. §

12  227(b)(1)(A). Among other things, the FCC concluded:

13      The provision of a cell phone number to a creditor, e.g., as part of a
    credit application, reasonably evidences prior consent by the cell

14      phone subscriber to be contacted at that number regarding the debt. In
    the 1992 TCPA Order, the Commission determined that "persons who

15      knowingly release their phone numbers have in effect given their
    invitation or permission to be called at the number which they have

16      given, absent instructions to the contrary.

17  *See P. 564-565 of Declaratory Ruling in re Rules and Regulations Implementing the*

18  *Telephone Consumer Protection Act of 1991,* FCC 07-232 ¶ 10 (Dec. 28, 2007;

19  released Jan. 4, 2008) (attached as Ex. A to Request for Judicial Notice). The FCC

20  thus declared that "autodialed and prerecorded messages to wireless numbers provided

21  by the called party in connection with an existing debt . . . are permissible." *Id.* at 564

22  ¶ 9. The FCC Ruling was released on January 4, 2008 and became "final" on the

23  date of public notice. *Wilson,* 87 F.3d at 397.

24  **VI.**     **Jurisdiction Over This Action Is Vested Exclusively in the Court of**

25         **Appeal, With the United States Named as a Defendant**

26      **A.**     **The Hobbs Act**

27       In the Hobbs Act, Congress vested in federal courts of appeal *"exclusive*

28  *jurisdiction* to enjoin, set aside, suspend (in whole or in part), or to determine the validity

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  of . . . all final orders of the Federal Communication [sic] Commission made reviewable

2  by section 402(a) of title 47." 28 U.S.C. § 2342 (emphasis added). Section 402(a) of title

3  47 makes reviewable "[a]ny proceeding to enjoin, set aside, annul, or suspend any order

4  of the Commission" under the Communications Act of 1934, as amended by the

5  Telecommunications Act of 1996.[4]

6      As the Ninth Circuit has observed: "Together, these two statutes 'vest the courts

7  of appeal with *exclusive jurisdiction* to review the validity of FCC rulings.'" *US West*

8  *Communications, Inc. v. Hamilton,* 224 F.3d 1049, 1054 (9th Cir. 2000) (emphasis

9  added) (*quoting Wilson,* 87 F.3d at 396-97). Further, "[a]ggrieved parties may invoke

10  this exclusive jurisdiction only by filing a petition for review of the FCC's final order in

11  a court of appeals naming the United States as a party." *US West,* 224 F.3d at 1054

12  (*quoting US West Communications, Inc. v. MFS Intelenet, Inc.,* 193 F.3d at 1112 (9th

13  Cir. 1999); *see also* 28 U.S.C. § 2344.

14      Any party challenging the 2008 FCC Ruling would have to follow a specific

15  procedure set forth  by Congress and endorsed by the United States Supreme Court.

16  "A party challenging an FCC regulation as *ultra vires* must first petition the agency

17  itself, and if denied, appeal the agency's disposition directly to the Court of Appeals

18  as provided by the statute. *FCC v. ITT World Commc's, Inc.,* 466 U.S. at 468. '[T]he

19  procedural path designed by Congress serves a number of valid goals:  It promotes

20  judicial efficiency, vests an appellate panel rather a single district judge with the

21  power of agency review, and allows 'uniform, nationwide interpretation of the federal

22  statute by the centralized expert agency created by Congress' to enforce the TCPA."

23  *Nack*, 715 F.3d at 685-86 (*citing CE Design, Ltd.,* 606 F.3d at 450) (*quoting N.Y. Co.

24  v. N.Y. Dep't of Labor*, 440 U.S. at 528).

25

26  _____

27  [4]    The statute contains certain enumerated exceptions, none of which is relevant
in the circumstances here. *See* 47 U.S.C. § 402(b).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                           8                    13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1    **1.**    **The Hobbs Act Governs Here As the 2008 FCC Order Is The**

2    **Basis of SHARP's Defense**

3    For an action to be subject to the exclusive jurisdiction of the Court of Appeals

4    under the Hobbs Act, it (1) must involve a "final order" of the FCC and (2) must seek

5    to "enjoin, set aside, suspend, . . . or . . . determine the validity of" that order. 28

6    U.S.C. § 2342; *see generally Wilson,* 87 F.3d 393.

7    Although Hudson's pleading does not specifically address the 2008 FCC

8    Ruling, "the Hobbs Act's jurisdictional limitations are 'equally applicable whether [a

9    party] wants to challenge the rule directly . . . or indirectly, by suing someone who can

10   then be expected to set up the rule as a defense in the suit." *CE Design, Ltd.,* 606 F.3d

11   at 448; *see also United States v. Dunifer*, 219 F.3d 1004, 1006-07 (9th Cir. 2010)

12   (noting that the Hobbs Act's jurisdictional bar applies to affirmative defenses.)[5]

13   **(a)**    **The FCC Ruling is a Final Order for Purposes of the**

14   **Statute**

15   For the purposes of the exclusive jurisdiction provisions of the Hobbs Act,

16   "agency orders are 'final orders' . . . 'if they impose an obligation, deny a right, or fix

17   some legal relationship as a consummation of the administrative process.'" *US West,*

18   224 F.3d at 1054 (*quoting Sierra Club v. United States Nuclear Regulatory*

19   *Commission,* 862 F.2d 222, 225 (9th Cir. 1988)). The Ninth Circuit has determined

20   that a "final agency action" for purposes of invoking the Administrative Procedures

21   Act is "analytically equivalent" to a "final order" under the Hobbs Act, and thus

22   follows the analysis of a "final agency action" articulated by the Supreme Court.

23

24   [5]    *See also Nack,* 715 F.3d at 686-87 ("[W]e have clearly held that '[a] defensive
25   attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of
     the Court of Appeals as is a preemptive strike by seeking an injunction.") (*quoting*
26   *United States v. Any and All Radio Station Transmission Equip.*, 207 F.3d 458, 463
     (8th Cir. 2008)). "We hold therefore, that the Hobbs Act generally precludes our court
27   from holding the contested regulation invalid outside the statutory procedure
     mandated by Congress." *Nack,* 715 F.3d at 686.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                    9                    13 CV 1807 MMA NLS

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1   Under the Supreme Court's analysis, a final agency action must result from the

2   conclusion of the agency decision-making process and be an action that determines

3   rights and obligations:

> As a general matter, two conditions must be satisfied for agency action to be final": First, the action must mark the consummation of the agency's decision making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

8   *US West,* 224 F.3d at 1054 (*quoting Bennett v. Spear,* 520 U.S. 154, 177-78 (1997)).

9   The 2008 FCC Ruling meets both conditions. *Nack,* 715 F.3d at 686-87; *CE Design,*

10  *Ltd.,* 606 F.3d at 448.

11  **(b)   The FCC Ruling is the Consummation of the FCC's**

12  **Decision Making Process**

13  The FCC Ruling is a definitive and final statement of the FCC's position on the

14  issue presented in ACA's Petition. The Ruling was issued after solicitation and review

15  of public comment. The Ruling is neither tentative nor interlocutory; rather, it

16  unequivocally "order[s]" the analysis and conclusions set forth therein. *See* FCC

17  Ruling at 9-10, 11, 16, 17.  It "terminat[es] a controversy or removes] uncertainty." 47

18  C.F.R. § 1.2 (addressing scope of FCC declaratory rulings); *Wilson,* 87 F.3d at 397;

19  *See also id.* at 395-99 (FCC Declaratory Ruling is a "final order" under the Hobbs

20  Act; reviewing cases from 101 other circuits to have decided the issue, except the

21  Eleventh, invoking exclusive appellate jurisdiction to review declaratory rulings

22  issued by the FCC).  *Nack,* 715 F.3d at 686-87; *CE Design, Ltd.,* 606 F.3d at 448.

23  **(c)   The FCC Ruling determines rights and obligations from**

24  **which legal consequences flow**

25  The FCC Ruling also meets the second prong of the definition of "final agency

26  order" - determining rights and obligations. It "concludes" that "the provision of a cell

27  phone number to a creditor, e.g. as part of a credit application, reasonably expresses

28  prior express consent by the cell phone subscriber to be contacted at that number

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  regarding the debt," citing its earlier 1992 TCPA Order, in which "the Commission

2  determined that 'persons who knowingly release their numbers have in effect given

3  their invitation or permission to be called at the number which they have given, absent

4  instructions to the contrary." FCC Ruling at 6 ¶ 9.

5       It conclude[s]" that "the creditor should be responsible for demonstrating that

6  the consumer provided prior express consent." FCC Ruling at 7 ¶ 10. It sets forth the

7  legal consequences of the rights of the consumer and creditor under the Ruling: that a

8  creditor does not violate the TCPA under the circumstances addressed in the Petition.

9  FCC Ruling at 6-7 ¶¶9, 11; *See US West,* 224 F.3d at 1055.

10      Under the Hobbs Act, as well as Ninth Circuit precedent, the FCC Ruling

11 is a "final agency order." *See also Nack*, 715 F.3d at 686-87; *CE Design*, *Ltd.*,

12 606 F.3d at 448-49.

13  **B.    HUDSON's Suit Requires that the Court Enjoin, Set Aside, Suspend**

14        **or Determine the Validity of the FCC Ruling**

15      The relief sought in HUDSON's complaint could not have been awarded

16 without the Court enjoining, setting aside, suspending and/or determining the validity

17 of the FCC Ruling. *See Victor Oolitic Stone Co. v. CSX Transportation, Inc.,* 852 F.

18 Supp. 721, 723 (S.D. Ind. 1994) ("A challenge to an [agency] order need not be direct

19 for [the exclusive jurisdiction of the court of appeals] to be invoked; all that is

20 required is that the effect of the prayed for relief contradict a[n] [agency] order.").

21      In *Wilson,* the Ninth Circuit held that Hobbs Act exclusive jurisdiction is invoked

22 whenever an action requires a determination of the validity of an agency order:

23        [T]he [complaint's] claims raise the *same issues decided by the FCC*
        in the Declaratory Ruling . . . *If the district court disagreed with the*
24        *Declaratory Ruling, the effect of the proceeding would have been to*
        *enjoin, set aside, or suspend the Declaratory Ruling—all actions*
25        *which are within the exclusive domain of the court of appeals under*
        *§ 2342.* Even if the district court agreed with the Declaratory Ruling,
26        that *result would have required a determination of the validity* of the
        Declaratory Ruling, which would also violate § 2342.
27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                                    11                          13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1  *Wilson,* 87 F.3d at 400 (emphasis added).

2  In this case, as in *Wilson,* the FCC Ruling and HUDSON's lawsuit address the

3  "same issues."  In particular, HUDSON contends that her providing her cell phone

4  number to SHARP at the time she was incurring debt for medical services to SHARP

5  did not constitute "express consent" as the Federal Communications Commission

6  decreed in its *Declaratory Ruling in re Rules and Regulations Implementing the*

7  *Telephone Consumer Protection Act of 1991,* FCC 07-232 (released Jan. 4, 2008).

8  HUDSON's action could not be adjudicated by this Court without effectively

9  enjoining, setting aside, suspending, or determining the validity of the FCC Ruling—

10  regardless whether this Court ruled in favor of HUDSON, or whether the Court had

11  adopted SHARP's (and the FCC's) position. *See Wilson,* 87 F.3d at 400; *see also CE*

12  *Design, Ltd.*, 606 F.3d at 448-49 ("the Hobbs Act's jurisdictional limitations are

13  'equally applicable whether [a party] wants to challenge the rule directly . . . or

14  indirectly, by suing someone who can then be expected to set up the rule as a defense

15  in the suit."); *see also Dunifer*, 219 F.3d at 1006-07 (noting that the Hobbs Act's

16  jurisdictional bar applies to affirmative defenses).  *See also Nack,* 715 F.3d at 686

17  ("We hold, therefore, that the Hobbs Act generally precludes our court from holding

18  the contested regulation invalid outside the statutory procedure mandated by

19  Congress."); *CE Design, Ltd.*, 606 F.3d at 448 ("The effect of that decision is to

20  "either strike or validate" the regulation interpreting the statute.  But deeming agency

21  action valid or ineffective is precisely the sort of review that the Hobbs Act delegates

22  to the courts of appeal in cases challenging final FCC orders.").

23  **C.**  **Virtually Every Jurisdiction in the United States Has Agreed with**

24  **SHARP's Position in This Matter**

25  Regardless of how the claim is brought before the court, the practical effect of

26  effect of accepting plaintiff's arguments here would be to "set aside, annul, or

27  suspend" the 2008 FCC Ruling regarding "prior express consent."  Plaintiff, without

28  question, provided her wireless number to her creditor (SHARP) "at the time of the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                                    12                    13 CV 1807 MMA NLS

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1   transaction that resulted in the debt owed." FCC Ruling at 7 ¶ 10.  This provision of

2   her cell number "reasonably evidences prior express consent by the cell phone

3   subscriber to be called at the number regarding the debt." FCC Ruling at 6 ¶ 9.  As a

4   matter of law, pursuant to the 2008 FCC Ruling, SHARP had *every right* to contact

5   plaintiff about her debt utilizing an automatic telephone dialing system (hereinafter

6   "ATDS.")[6]

7          Virtually every court examining the issue has found that findings within the

8   2008 FCC Ruling regarding "prior express consent" are binding on the district courts

9   and not subject to review except by the federal courts of appeals.  *See Sacco v. Bank*

10  *of America, N.A.*, No. 5:12-cv-00006-RLV-DCK, 2012 U.S. Dist. LEXIS 178030, at

11  *27-29, 2012 WL 6566681, at *9 (W.D.N.C. Dec. 17, 2012) ("Because the courts of

12  appeals have been vested with exclusive jurisdiction to review the validity of FCC

13  rulings, this Court will hereby accept as valid this FCC ruling, which is a "final order"

14  for the purposes of 28 U.S.C. § 2342 because it was the agency's final decision

15  interpreting the "prior express consent" provision of the TCPA and determines legal

16  rights and obligations"); *Frausto v. IC System, Inc.*, No. 10 CV 1363, 2011 U.S. Dist.

17  LEXIS 93514, at *6, 2011 WL 3704249 at *2 (N.D. Ill. Aug. 22, 2011) ("The FCC's

18  declaratory rulings on this subject bind me pursuant to the Hobbs Act."); *Greene v.*

19  *DirecTv, Inc.*, No. 10 C 117, 2010 U. S. Dist. LEXIS 118270, at *9, WL 4628734, at

20  *3 (N.D. Ill. Nov. 8, 2010) ("A district court must accept the FCC's interpretation of

21  the TCPA as expressed in their regulations and Orders. . . . Because we have no

22  jurisdiction to determine the validity of FCC orders, we decline to address Greene's

23  challenge to the FCC's interpretation of the TCPA.  See 28 U.S.C. § 2342(1)

24  (assigning exclusive jurisdiction to determine validity of FCC orders to the Court of

25  _____

26  [6] Again, defendant SHARP does not concede in any way, shape or form that it utilized
    an ATDS as that term is defined within the Telephone Consumer Protection Act to
27  contact plaintiff, but assumes so herein simply for purposes of argument as plaintiff
    has framed her Complaint.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1  Appeals.")); *Hicks v. Client Services, Inc.*, No. 07-61822-Civ-Dimitrouleas, 2009

2  U.S. Dist. LEXIS 131193, at *11, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009)

3  ("This Court does not have the jurisdiction to review FCC rulings under the TCPA.

4  28 U.S.C. § 2342"); *Nack,* 715 F.3d at 686 ("We hold, therefore, that the Hobbs Act

5  generally precludes our court from holding the contested regulation invalid outside

6  the statutory procedure mandated by Congress"); *CE Design, Ltd.,* 606 F.3d 448-49

7  ("But as the Supreme Court made clear, a litigant can't avoid the Hobbs Act's

8  jurisdictional bar simply by accusing an agency of acting outside its authority") and

9  *Leckler v. Cashcall, Inc.*, No. C 07-04002 IS, 2008 U.S. Dist. LEXIS 97439, 2008

10  WL 5000528 at *2-3 (N.D. Cal. Nov. 21, 2008).

11  The *Leckler v. Cashcall, Inc.,* 2008 U.S. Dist. LEXIS 97439, 2008 WL

12  5000528 case is of particular interest in that it was litigated for plaintiff Leckler by

13  plaintiff HUDSON's counsel in this matter.  In *Leckler*, the parties brought cross

14  motions for partial summary judgment, requesting that the United States District

15  Court, Northern District of California find that portions of the 2008 FCC Order were

16  not entitled to *Chevron* deference[7] and must be set aside or annulled.  In particular,

17  plaintiff sought just as here to invalidate and annul the "prior express consent" portion

18  of the 2008 FCC Order.  (Ex. "B" to RFJN.)

19  After rulings were issued, defendant Cashcall brought a Motion to Dismiss

20  Pursuant to F.R.C.P. 12(B)(1) on the grounds that the Hobbs Act divested the Court

21  of jurisdiction.  The parties, including the plaintiff represented by the same counsel of

22  record herein, *stipulated* that the Hobbs Act divested the United States District Court,

23  Northern District of California of jurisdiction over the case, and the Court dismissed

24  the action, citing lack of subject matter jurisdiction. (Ex. "C" to RFJN.)

25  ─────────────────

26  [7]      Referring to the doctrine of judicial deference to a Federal agency's
interpretation of a federal statute (such as the FCC 2008 Order) under the two part

27  framework announced in *Chevron, U.S.A., Inc. v. Natural Resources Defense
Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                         14                      13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1    The United States District Court, Northern District of California, in its Order of

2    Dismissal, stated: "The Court *agrees with both parties* that it did not have jurisdiction

3    to review the FCC's declaratory ruling. The Hobbs Act, 28 U.S.C. § 2342, gives the

4    federal courts of appeal 'exclusive jurisdiction to enjoin, set aside, suspend (in whole

5    or in part), or to determine the validity of all final orders of the Federal

6    Communications Commission made reviewable by section 402(a) of title 47.'"….

7    "Aggrieved parties may invoke this exclusive jurisdiction 'only by filing a petition for

8    review of the FCC's final order in a court of appeals naming the United States as a

9    party." (Ex. "D" to RFJN at 3:19-4:7) (emphasis added).

10    The *Leckler* court went on to explain:

11          The FCC's declaratory ruling is a 'final order' for purposes of
          28 U.S.C. § 2342 because it was the agency's final decision
12        interpreting the "prior express consent" provision of the TCPA and, as
          this case makes clear, the ruling determines legal rights and
13        obligations. *See US West*, 224 F.3d at 1055 ("agency orders are 'final
14        orders' for purposes of the Hobbs Act if they impose an obligation,
          deny a right, or fix some legal relationship as a consummation of the
15        administrative process.") The federal court of appeals had exclusive
16        jurisdiction over plaintiffs challenge to the FCC's declaratory ruling.
          This  Court's decision on this matter must be vacated. *See Watts v.*
17        *Pinckney*, 752 F.2d 406, 409 (9th Cir. 1985) ("It is well settled that a
18        judgment is void if the court that considered it lacked jurisdiction of
19        the subject matter. . . .") (citations omitted).

20    (Ex. "D" to RFJN at 4:8-16.)

21    The obvious question is why there is now a 180 degree turn from the stipulation

22    made in *Leckler* that the Hobbs Act vested exclusive jurisdiction in the Court of

23    Appeals for challenges to the FCC's 2008 "prior express consent" ruling.  The

24    Complaint at paragraph 10 cites as justification for finding jurisdiction, despite the

25    clear bar of the Hobbs Act, the recent case of *Mais v. Gulf Coast Collection Bureau,*

26    *Inc.* 2013 U.S. Dist. LEXIS 65603.

27    The *Mais* case is not only legally unsupportable on its jurisdictional analysis,

28    but highly distinguishable on a factual basis.  In *Mais,* the plaintiff's *wife* provided her

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                                    15                          13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1 husbands cell phone number to an admissions clerk.  Debt collection calls were then
2 made by a *debt collector* (Gulf Coast Collection Bureau, Inc.), *not the hospital,* to the
3 plaintiff who never personally provided his cellular number. The *Mais* court
4 succinctly stated: "They (Gulf Coast) contend that Plaintiff consented to be called by
5 Gulf Coast on his cell phone solely because his wife provided that number to an
6 admissions clerk.  In other words, Defendants ask the Court to imply consent from
7 Plaintiff's wife's conduct." *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-
8 61936-Civ-Scola, 2009 U.S. Dist. LEXIS 65603, at *28 (S.D. Fla. May 8, 2013).

9 The *Mais* court was careful to distinguish the facts of the case from those in
10 which the actual patient signed and provided the cellular number, stating: "*Compare*
11 *Mitchem,*[8] 2012 U.S. Dist. Lexis 126017, 2012 WL 170968 at *1 (cell number given
12 to medical provider where that medical provider was the creditor to whom the debt
13 was owed.)" *Mais*, 2009 U.S. Dist. LEXIS 65603 at *34.   In stark contrast, in this
14 case Hudson signed her own Admission Agreement and Attestation, *specifically*
15 *providing* her cell number to SHARP as the sole point of telephonic contact.

16 The *Mais* court also looked at the Notice of Privacy Practices signed by the
17 plaintiff's wife, which merely stated that the hospital "may use and disclose health
18 information about your treatment and services" to bill and collect payment from you,
19 your insurance company or a third party payor, and found that "it is not clear that the
20 patient would understand 'health information about your treatment and services' to
21 mean his cell phone number." *Mais*, 2009 U.S. Dist. LEXIS 65603, at *33.

22 On this point, the factual distinction to this case could not be starker, in that
23 Hudson declared she was *uninsured* and would *self pay*, then was provided a Notice
24 of Privacy Practices that fully disclosed that SHARP "may use and disclose *your*
25 *information for billing and to arrange payment from you,* an insurance company, a

26 ───────────

27 [8]   *Mitchem v. Illinois Collection Service*, No. 09 C 7274, 2012 U.S. Dist. LEXIS
28 126017, 2012 WL 170968 (N.D. Ill. Jan. 20, 2012).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                    16                    13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1  third party or a collection agency," and then signed an Attestation *providing her*

2  *cellular number* ending in 5954 as her sole telephonic point of contact with SHARP.

3  (Kiesendahl Decl. ¶¶ 4-11; Sevenikar Decl. ¶¶ 4-12.)  In short, the *Mais* decision has

4  no factual application to the case at bar, despite plaintiffs evasive pleading which

5  eliminated the key facts, which simply cannot be disputed.

6  Careful analysis of the portion of the *Mais* decision discussing the Hobbs Act

7  vesting of exclusive jurisdiction in the Court of Appeals for challenges to the FCC's

8  2008 "prior express consent" ruling, also reveals that is based on illogical and vapid

9  reasoning.  The *Mais* decision has never been followed by any other judge in the

10  history of jurisprudence.  The *Mais* decision is an abomination without any precedent,

11  and on June 10, 2013 was certified for interlocutory appeal before the Eleventh

12  Circuit pursuant to 28 U.S.C. § 1292(b) as a "pivotal and debatable" opinion.[9] *Mais*,

13  2013 U.S. Dist. LEXIS 81129, at *15.

14  The criticism of the *Mais* decision, upon which plaintiff relies to establish

15  subject matter jurisdiction, has been stringent and universal.  The reasoning of the

16  United States District Court for the District of Colorado in *Chavez v. The Advantage*

17  *Group*, 2013 U.S. Dist. LEXIS 110522 is instructive.

18  The *Chavez* case, just as in this case, involved the provision of a cell phone

19  number at the time medical services were provided to plaintiff.  Citing *Mais*, plaintiff

20  argued that the District Court had jurisdiction over the case as there was a potential

21  violation of the TCPA, as the 2008 Order on prior express consent might not be

22  entitled to *Chevron* deference.

23  Disagreeing, Judge Robert E. Blackburn stated:

24

25  [9]  In the Order certifying interlocutory appeal, the *Mais* court found there was a

26  "substantial ground for difference of opinion," "because other courts, including the
   Seventh Circuit, have ruled that district courts lack jurisdiction under the Hobbs Act

27  to review the FCC's orders in cases of this kind." *Mais*, 2013 U.S. Dist. LEXIS 81129
   at * 18, citing seven additional opinions from various District and Circuit courts.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Plaintiff urges the court to find, contrary to the 2008 FCC Ruling, that she did not expressly consent, relying on the district court's decision in *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 U.S. Dist. LEXIS 65603, 2013 WL 1899616 (S.D. Fla. May 8, 2013), *cert. granted* (June 10, 2013). I am not persuaded. The *Mais* court is the only federal district court to conclude that the district courts have jurisdiction to review FCC Rulings, but I find that the analysis on which this conclusion depends to be legally insupportable and refuse plaintiff's invitation to adopt it.

. . .

The *Mais* court went to great – indeed, one might say extreme – lengths to narrowly define this jurisdictional provision. The court stated, with little more than its own *ipse dixit* as support, that a proceeding under the TCPA was not an action to "enjoin, set aside, annul, or suspend" an order of the Commission. Having thus characterized the proceeding before it, the court proceeded to review the 2008 FCC Ruling, finding it is not entitled to *Chevron* deference. *See Mais*, 2013 U.S. Dist. LEXIS 65603, 2013 WL 1899616 at *6-9.

. . .

I am not inclined to engage in the semantical machinations which allowed the *Mais* court to bypass the jurisdictional boundary established by Congress. Regardless of how the claim is brought before the court, the practical effect of accepting plaintiff's argument here would be to "set aside, annul, or suspend" the 2008 FCC Ruling. I am without jurisdiction to effectuate that outcome. I therefore join with those courts that have found the 2008 FCC ruling is binding on the district courts and not subject to review except by the federal courts of appeals.

*Chavez v. The Advantage Group,* No. 12-cv-02819-REB-MEH, 2013 U.S. Dist. LEXIS 110522, *6-9 (multiple citations omitted).

Indeed, the *Mais* opinion engaged in more than "semantical machinations," it actually advocates that a District Court perform *Chevron* deference analysis on an FCC Final Ruling *before determining its own subject matter jurisdiction*. However, "an Article III court's obligation to ensure its jurisdiction to resolve a controversy precedes any analysis of the merits." *CE Design, Ltd.*, 606 F.3d at 447-48 (*citing Davis v. Fed. Election Comm'n*, 554 U.S. 724, 128 S. Ct. 2759, 2768 (2008)); and *Morales-Morales v. Ashcroft*, 384 F.3d 418, 421 (7th Cir. 2004).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1

18

13 CV 1807 MMA NLS

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1  The Seventh Circuit Court of Appeals, in analyzing the approach advocated by

2  *Mais* in the context of a TCPA action, came to the correct conclusion.  "In arguing

3  that a district court can put off considering its jurisdiction until after step one of

4  *Chevron*, (plaintiff) turns that traditional approach on its head. . . . The purpose of

5  even just the first step of the *Chevron* analysis is to determine the validity of the

6  agency's interpretation. . . . The effect of that decision is to 'either strike or validate'

7  the regulation interpreting the statute. . . . But deeming agency action valid or

8  ineffective is precisely the sort of review that the Hobbs Act delegates to the courts of

9  appeals in challenging final FCC Opinions."[10] *CE Design, Ltd.,* 606 F.3d at 447-48

10  (*citing* 28 U.S.C. § 2342(1)); *FCC v. ITT World Commc's, Inc.,* 466 U.S. at 468 and

11  *Wilson v. A.H. Belo. Corp.*, 87 F.3d at 399-400 (9th Cir. 1996) (noting that asking a

12  district court to agree or disagree with an FCC ruling invokes the Hobbs Act's

13  jurisdictional bar).

14  **D.    This Court Should Dismiss the Action As It Lacks Jurisdiction**

15  It is clear that to rule in plaintiffs favor, this Court would need to "set

16  aside, annul, or suspend" the 2008 FCC Ruling.  The Court is without subject

17  matter jurisdiction to effectuate that outcome.  *Chavez,* 2013 U.S. Dist. LEXIS

18  110522, at *6-9; *Sacco,* 2012 U.S. Dist. LEXIS 178030, at *27-29; *Frausto,*

19  2011 U.S. Dist. LEXIS 93514, at *6; *Greene,* 2010 U. S. Dist. LEXIS 118270, at

20  *9; *Hicks,* 2009 U.S. Dist. LEXIS 131193, at *11; *Leckler,* 2008 U.S. Dist.

21  LEXIS 97439, at *6; *Nack*, 715 F.3d at 685-86; *CE Design, Ltd.*, 606 F.3d at

22  448-49.

23

---

24  [10]    At least one District Court has since found that even making the argument that
the court should disregard the FCC's 2008 interpretation of the TCPA statute in part
25  because it was "inconsistent with the language of the statute" "comes perilously close
to violating Fed. R. Civ. P. 11." . . .  "A litigant can't avoid the Hobbs Act's
26  jurisdictional bar simply by accusing an agency of acting outside its authority."
*Nelson v. Santander Consumer USA, Inc.*, No. 11-cv-307-bbc, 2013 U.S. Dist. LEXIS
27  40799, at *23 (W. Dist. Wis. Mar. 8, 2013).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                          19                          13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1    The *Mais* opinion does violence to the specific procedures set forth  by

2    Congress, and endorsed by the United States Supreme Court, to challenge the 2008

3    FCC Ruling. "A party challenging an FCC regulation as *ultra vires* must first petition

4    the agency itself, and if denied, appeal the agency's disposition directly to the Court

5    of Appeals as provided by the statute." *FCC v. ITT World Commc's, Inc.,* 466 U.S. at

6    468.

7    The *Mais* opinion, if followed, also would destroy the specific procedural path

8    designed by Congress, which "serves a number of valid goals:  It promotes judicial

9    efficiency, vests an appellate panel rather a single district judge with the power of

10    agency review, and allows 'uniform, nationwide interpretation of the federal statute

11    by the centralized expert agency created by Congress' to enforce the TCPA."[11] *Nack,*

12    715 F.3d at 685-86 (*citing CE Design*, *Ltd.*, 606 F.3d at 448-49) (*quoting N.Y. Co. v.*

13    *N.Y. Dep't of Labor*, 440 U.S. at 528.

14    As this Court lacks subject matter jurisdiction over this action,  the action must

15    be dismissed.  Fed. R. Civ. P. 12(h); *See Wilson,* 87 F.3d at 395-96 (dismissing the

16    action where district court found it lacked jurisdiction under the Hobbs Act), *Leckler,*

17    2008 U.S. Dist. LEXIS 97439, at *6 (dismissing the action where district court found

18    it lacked jurisdiction under the Hobbs Act).

19    **VII.**   **IN THE ALTERNATIVE, SHARP REQUESTS AN ORDER**

20    **DISMISSING THE CASE FOR FAILURE TO STATE A CLAIM**

21    Without conceding that this Court has subject matter jurisdiction, in the

22    alternative, defendant SHARP also moves for an Order of Dismissal for Failure to

23

24    [11]   The 8th Circuit Court of Appeals in *Nack* also observed that permitting "an end

25    run around the administrative review mandated by the Hobbs Act"…"could result in a

judicial determination of a regulations invalidity without participation by the agency

26    and upon a record not developed by the agency." *Nack*, 715 F.3d at 686.  That exact

danger exists in this action, which is not only brought in the wrong venue, but *fails to*

27    *name the United States as a party* as the Hobbs Act requires so that the FCC can

participate in creating the record and defending its actions.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1          20          13 CV 1807 MMA NLS

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1   State a Claim pursuant to Federal Rule of Civil Procedure 12(B)(6).

2   As thoroughly demonstrated above, SHARP has an absolute right to contact

3   plaintiff on her cellular phone via a ATDS to collect on past due debt, if plaintiff

4   provided the cellular number in question at the time she agreed to incur a debt with

5   SHARP. The FCC Ruling concluded that "the provision of a cell phone number to a

6   creditor, e.g. as part of a credit application, reasonably expresses prior express

7   consent by the cell phone subscriber to be contacted at that number regarding the

8   debt," citing its earlier 1992 TCPA Order, in which "the Commission determined that

9   'persons who knowingly release their numbers have in effect given their invitation or

10   permission to be called at the number which they have given, absent instructions to

11   the contrary." FCC Ruling at 6 ¶ 9.

12   Plaintiff has alleged that she went to SHARP for medical care on or around

13   September 25, 2012. (Compl. ¶ 14.)  She also admits that she "may have given them

14   (SHARP) her cellular telephone number" at that time. (*Id.*)  Plaintiff quoted the

15   January 4, 2008 FCC Ruling, stating that the FCC "emphasized that prior express

16   consent is deemed granted only if the wireless number was provided to the creditor,

17   and that such number was provided during the transaction that resulted in the debt

18   owed." (*Id.* at ¶ 9.)  Plaintiff also complains that SHARP "operates as a collection

19   corporation servicing patient debt owed to SHARP for medical services provided

20   SHARP to patients," and that "in that capacity, Defendant SHARP attempts to collect

21   past-due amounts on the debt." (*Id.* at ¶ 5.)  Plaintiff also cites the *Mais* opinion as

22   the thin reed on which she bases the subject matter jurisdiction of this Court. (*Id.* at ¶

23   10.)

24   In short, while *highly evasively pleaded*, plaintiff has admitted that she "may

25   have" given her cellular number to SHARP at the time of applying for medical care,

26   and that SHARP makes its calls "to collect past-due amounts on the debt." (Compl. ¶

27   5.)  If this Court follows the FCC Ruling as virtually every jurisdiction has done, her

28   complaint fails to state a *facially plausible* claim. *Bell Atlantic Corp. v. Twombly*, 550

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1          21          13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1   U.S. 544, 570, 127 S. Ct. 1955 (2007). "Determining whether a complaint states a

2   plausible claim for relief" is "a context-specific task that requires the reviewing court

3   to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S.

4   662, 684, 129 S. Ct. 1937, 1949 (2009). Allegations of wrongdoing will be deemed

5   "implausible" if there are "obvious alternative explanations for the facts alleged

6   indicating lawful conduct, not the unlawful conduct alleged by plaintiff." *Id.* at 682.

7        The evasive manner in which plaintiff alleges her Complaint make it clear that

8   she cannot state a plausible claim for relief under *Twombly/Iqbal* standards.

9   Accordingly, to the extent this Court does not dismiss the case for lack of subject

10  matter jurisdiction, it should dismiss the case for failure to state a claim pursuant to

11  Federal Rule of Civil Procedure 12(b)(6).

12  **VIII.  IN THE ALTERNATIVE, SHARP REQUESTS AN ORDER**

13  **     REQUIRING A MORE DEFINITIVE STATEMENT**

14       Without conceding that this Court has subject matter jurisdiction, in the

15  alternative, defendant SHARP also moves for an Order Requiring a More Definitive

16  Statement pursuant to Federal Rule of Civil Procedure 12(e). A Rule 12(e) Motion is

17  appropriate where the complaint is so vague and ambiguous that defendant cannot

18  reasonably be expected to frame a proper response. *Cellars v. Pacific Coast*

19  *Packaging, Inc.,* 189 F.R.D. 575, 578 (N.D. Cal. 1999); *Gregory Village Partners,*

20  *L.P. v. Chevron U.S.A., Inc.,* 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011).

21       It is abundantly clear that plaintiff herein has made a conscious and tactical

22  decision to eliminate or obfuscate the facts that allow application of the 2008 FCC

23  Ruling to efficiently dispose of the case. Plaintiff vaguely alleges that she "*may have*

24  given them (SHARP) her cellular telephone number ending in 5954" at the time she

25  sought uninsured treatment. (Compl. ¶ 14.) She alleges that she was contacted by

26  ATDS by SHARP, and that SHARP "operates as a collection corporation servicing

27  patient debt owed to SHARP for medical services provided SHARP to patients," but

28  fails to plead the fact that *she owed debt* to SHARP, or that the calls made to her were

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-6838-1717.1                    22                    13 CV 1807 MMA NLS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1 | in fact calls *to secure payment* of the debt as covered by the 2008 FCC Ruling. (*Id.* at
2 | ¶ 5.)

3 |      With this level of obfuscation and evasion, SHARP cannot reasonable be
4 | expected to frame an appropriate response. *Cellars,* 189 F.R.D. at 578; *Gregory*
5 | *Village Partners, L.P.,* 805 F. Supp. 2d at 896. Accordingly, without conceding the
6 | subject matter jurisdiction of this Court, SHARP requests in the alternative an order
7 | pursuant to Federal Rule of Civil Procedure 12(e) requiring plaintiff to disclose these
8 | facts and the documents attached to SHARP's evidentiary declarations herein, and
9 | then provide a theory disclosing exactly and concisely how the Hobbs Act vesting of
10 | exclusive jurisdiction in the Court of Appeals for challenges to the FCC's 2008 "prior
11 | express consent" ruling does not deprive this Court of subject matter jurisdiction.

12 | **IX.   CONCLUSION**

13 |      SHARP HEALTHCARE is a nonprofit hospital organization through which it
14 | and its affiliated hospitals have served the San Diego community's medical care
15 | needs for decades.  It is proud of its reputation as a responsible member of the
16 | community, and it complied with every aspect of the TCPA's "prior express consent"
17 | provisions as declared in the FCC's 2008 Ruling.  This action is simply an attempt to
18 | circumvent the procedural requirement of the Hobbs Act, which requires not only that
19 | the matter be brought in the Court of Appeal, but that the United States be named as a
20 | defendant.

21 |      This specific procedural path designed by Congress serves a number of valid
22 | goals:  It promotes judicial efficiency, vests an appellate panel rather a single district
23 | judge with the power of agency review, and allows 'uniform, nationwide
24 | interpretation of the federal statute by the centralized expert agency created by
25 | Congress' to enforce the TCPA. It also prevents innocent parties, such as SHARP,
26 | from having to defend an expensive and inappropriate collateral attack on the decision
27 | making authority of a federal agency.

28 | ///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

23

1    This Court is not the appropriate venue for plaintiffs vendetta with the FCC,

2  nor is SHARP the correct defendant. For the foregoing reasons, SHARP requests that

3  the Court immediately dismiss this action for lack of subject matter jurisdiction and

4  award SHARP it's costs herein.

5

6  DATED: September 24, 2013          LEWIS BRISBOIS BISGAARD & SMITH LLP

7

8                                     By:        /s/ Tim J. Vanden Heuvel

9                                          Tim J. Vanden Heuvel
                                           Attorneys for Defendant SHARP
10                                          HEALTHCARE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW